BRISTOW v. CARRIGER *et al.*

No. 195.    Opinion Filed July 13, 1909.

(103 Pac. 596.)

**LANDLORD AND TENANT—Right to Crops—Tenancy at Sufferance.**
Where, on appeal from an order dissolving a temporary injunction, the facts were that defendants were holding over under a lease establishing a tenancy at will, and as such were tenants at sufferance, and that while so holding, and after their crop had matured, they were dispossessed by the landlord with the aid of the Indian agent, held, that a parol reservation of said

crop by agreement with the landlord prior to being thus dispossessed was good and operated as a constructive severance thereof and gave to said tenants the right of ingress and egress to cut and carry the same away, and that the trial court did not abuse its discretion in dissolving a temporary injunction sued out by a lessee put in possession by the landlord subsequent to said reservation and before said crop was removed by said tenants, restraining them from entering upon the premises for the purpose of removing said crop.

(Syllabus by the Court.)

*Error from District Court, Coal County; A. T. West, Judge.*

Action by A. J. Bristow against J. W. Carriger and James Carriger. Judgment for defendants, and plaintiff brings error. Affirmed.

*E. E. McInnis,* for plaintiff in error, citing: *Ison v. Cornett,* 25 Ky. L. Rep. 366; *Craig v. Van Bibber,* 100 Mo. 584; *Searcy v. Hunter,* 81 Tex. 644; 8 A. & E. Enc. Law (2d Ed.) 303, note 6, 329; *Lindsey v. Winona, etc., Co.,* 43 Am. Rep. 228; *Phillips v. Keysaw,* 7 Okla. 674; *Pilgrim v. Beck,* 69 Fed. 895; *Carlisle v. Kilbrew* (Ala.). 6 L. R. A. 617; *Altes v. Hinkler,* 36 Ill. 275; *McGinnis v. Fernandes,* 135 Ill. 69; *Rowell v. Klein,* 44 Ind. 290; *Cincinnati v. White,* 6 Pet. (U. S.) 431; *Parryman v. Cunningham,* 16 Okla. 94; *Barnes v. Newton,* 5 Okla. 428; *Woodruff v. Wallace,* 3 Okla. 355; Bouvier, Law Dic., title Emblements, and cases cited; *Baker v. McInturff,* 45 Mo. App. 505.

*J. R. Wood* and *J. G. Ralls,* for defendants in error, citing: 24 Cyc. 906; *Thompson v. Christies et al.,* 11 L. R. A. 236; *Tuttle v Jackson,* 6 Wend. 213; *Jackson v. Sharp,* 9 John. 713; *Patterson v. De la Ronde,* 8 Wall. 292; *Levinz v. Will,* 1 Dall. 430.

Turner, J.   From an order of the district court of Coal county dissolving a temporary injunction issued at chambers herein on October 5, 1905, by the Judge of the United States Court for the Indian Territory, Central District, at Atoka, restraining J. W. Carriger and James Carriger, defendants in error, defendants below, their agents, servants, etc., from going on the premises set forth in the complaint or removing therefrom any portion of the

crop raised by them thereon that year, A. J. Bristow, plaintiff in error, plaintiff below, prosecutes this appeal, and assigns and relies upon 21 alleged errors as grounds for reversal. After demurrers were filed to the complaint and answer, and before they were passed upon, the cause was by consent referred to a special master to take proof and report upon the issues of fact and of law, which he did December 9, 1905, and which said report was by the court approved and the order appealed from entered. As the respective demurrers search the record, and plaintiff would profit nothing thereby, we will pass the contention that the court erred in overruling plaintiff's demurrer to defendants' answer and proceed to determine the cause upon its merits, which are best reached by considering his assignment that the order of the court dissolving the temporary injunction is contrary to law. As the dissolving of an injunction, like the granting of it, is a matter largely within a sound judicial discretion to be determined by the facts in each particular case and as, except in case of manifest abuse or a clear showing of error on the part of the trial court, this court will not interfere with that discretion. (Am. & Eng. Enc. of Law, 424.) The question for us to determine is whether, under all the facts, the trial court, in dissolving the injunction and entering the order complained of, exercised a sound judicial discretion. If so, we must sustain the order.

The evidence tends to prove, as found by the master: That the lands set forth in the complaint are a part of the allotment of Newton T. Tiner, a citizen of the Choctaw Nation; that on February 11, 1904, Tiner for value leased said land to defendants for a term of three years from January 1, 1904; that said lease was recorded July 2 1904; that they took possession under said lease and raised and harvested a crop on said land that year; that, while thus in possession of said lands, said Tiner made a lease thereof to plaintiff dated August 6, 1904, who recorded it August 11, 1904; that on December 29, 1904, plaintiff served on defendants a written notice to quit and deliver possession of said land to him, and on their failure to do so, on April 1, 1905, brought

suit in ejectment against them for possession thereof in the United States Court at Atoka; that some time in August, 1905, plaintiff joined said Tiner in complaint to the United States Indian agent for the Union agency that defendants were unlawfully withholding said land from him; that thereupon said agent investigated the case and informed defendants at their home a short time thereafter that their lease was invalid whereupon Tiner, who was present at the interview, told defendants that they could have the crops then growing on said place; that thereafter on September 16, 1905, said Indian agent dispossessed defendants of said land and placed Tiner in possession thereof, he making no claim to the crop belonging to defendants, who, prior to that time, had gathered a part of it, and on October 5, 1905, while continuing so to do, plaintiff, being in possession of said land under Tiner, dismissed his said suit in ejectment and by the order dissolved, restrained defendants from coming on said land and harvesting the remainder of said crop, alleging himself to be the owner thereof.

Plaintiff's theory of this case, in effect, is that as the crop was a part of the freehold at the time he took possession thereof, and the same being within his close, he has a right to invoke the injunctive aid of the court to protect his property rights therein against repeated trespasses, to compensate him in damages for which he has no adequate remedy at law, owing to the insolvency of defendants. There might be some ground for equitable interference were he the owner or possessed of an interest in the property; but he is not. It is insisted that the lease under which defendants entered is void in virtue of that section of the Atoka agreement set forth in Act June 28, 1898, c 517, § 29, 30 Stat. 507, which reads:

"Every lease which is not evidenced by writing, setting out specifically the terms thereof, or which is not recorded in the clerk's office of the United States Court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder."

Conceding this to be true, defendants in possession under the

same were tenants at will, not only by virtue of Mansf. Dig. §
3380 (Ind. T. Ann. St. 1899, § 2314), which reads:

"All leases, estates, interests of freeholds, or lease of years,
or any uncertain interest of, in, to or out of any messuages, lands
or tenements, made or created by livery or seizing only, or by
parol, and not put in writing and signed by the parties so mak-
ing or creating the same, or their agents lawfully authorized by
writing, shall have the force and effect of leases or estates at will
only, and shall not, either in law or equity, be deemed or taken
to have any other or greater effect or force than as leases not ex-
ceeding the term of one year"—
but also by authority of a long line of adjudicated cases, among
which is *Brockway v. Thomas,* 36 Ark. 518, and *Rogers v. Hill,*
3 Ind. T. 562, 64 S. W. 536. In the latter the court said:

"It has been uniformly held that possession under an invalid
conveyance or contract of sale creates a tenancy at will, and,
where a tenant goes into possession under an invalid lease, his
tenancy at its inception is merely a tenancy at will. *Hall v.
Wallace,* 88 Cal. 434, 26 Pac. 360; *Packard v. Railroad Co.,* 46
Ill. App. 244; *Lehman v. Nolting,* 56 Mo. App. 549; *Howard
v. Merriman,* 5 Cush. (Mass.) 563; *McIntosh v. Lee,* 57 Iowa,
356, 10 N. W. 896."

See, also, 18 Am. & Eng. Enc. of Law. p. 184, note 7, and
cases cited.

How this tenancy at will thus established was terminated,
if at all, plaintiff does not suggest. It is clear, however, that, as
such tenancy is terminable by any act of ownership on the part
of the landlord inconsistent with the nature of the estate (18
Am. & Eng. Enc. of Law, 187), if the making of the lease to
plaintiff had no such effect, the same was brought about by
the expiration of defendant's term of one year under their lease
after which their holding over up to the time they were dispos-
sessed by the Indian agent amounted to a mere tenancy at suffer-
ance. *Hauxhurst v. Lobree,* 38 Cal. 563.

That being true, the question necessary for us to determine
is: Who was entitled to this crop as emblements as between the
defendants and the landlord Tiner, at the time of the termination

of such tenancy by the entry of said landlord upon the land? Bingham, Real Prop. 539, lays down the rule thus:

"It seems to be accepted as a general rule of the common law that when the tenant sows or plants his crop, if it is not possible for him to know that his estate will terminate before the crops can ripen, and it does terminate before, he shall have the right to harvest and secure the crop in its maturity."

From which it would seem that, where a tenant sows or plants a crop, and it was possible for him to know, as in this case, that his estate would terminate before the crop could ripen, he shall not be entitled to emblements, and it has been so held in *Miller v. Cheney et al.*, 88 Ind. 446, and *Thomas v. Noel*, 81 Ind. 382. In the latter case the court, in its syllabus, say:

"The law favors the right of one who sows to reap; but, if he knows he cannot reap before the expiration of his right of possession, he sows at his peril. *  *  * "

Thus to our minds it is clear that, in the absence of any contract or understanding to the contrary between Tiner and defendants, Tiner would have been entitled to this crop as emblements upon the termination of such tenancy by his re-entry upon the land with the aid of the Indian agent; but the proof shows that prior to that time, and before the Indian agent had put him in possession, Tiner and defendants by express agreement reserved this crop to defendants, and it now becomes our duty to determine the validity of that reservation. That the same was a proper subject of reservation, and that said reservation operated as to said matured crop as a constructive severance thereof, is supported by authority. In *Backenstoss v. Stahler's Adm'rs*, 33 Pa. 251, 75 Am. Dec. 592, trover was brought by the administrators against Backenstoss for a quantity of wheat, rye, and straw. As such administrators, plaintiffs had sold the real estate of their intestate, under proceedings in partition, and defendant had become its purchaser. One of the conditions of the sale was:

"All straw from the winter grain now in the ground shall remain on the premises (except two ton) and the vendors shall reserve the right to take firewood for the two families now living on the premises, until said 2d day of April, and five cords besides, to be

taken away on or before the time of possession given. The above-mentioned straw shall be long straw, thrashed with flails."

At the time of the sale plaintiffs gave verbal notice that the whole of the crop of grain in the ground was reserved except four bushels, which the purchaser was to take for harvesting and threshing in case he should choose to cut the grain. On the trial plaintiffs offered proof that, after the written conditions of sale were read, the crier publicly announced that the grain sown on the place after the death of the deceased was not sold but reserved, and that the purchaser understood it, but that the same was inadvertently omitted from the writing. The Supreme Court held the evidence properly admissible, that the reservation was a good one, and operated as such severance as prevented the grain from passing as realty on a sale of the premises; and, further, that such reservation gave the right to enter, cut, and carry away the grain which, if wrongfully taken by the vendee, "trover would lie."

In *Baker v. Jordon,* 3 Ohio St. 438, it was held that a growing crop of corn might be reserved by parol from the operation of a deed for the land whereon it grows. See, also, *Johnson Grabow v. Williams McCracken et ux.,* 23 Okla. 612, 102 Pac. 84.

From all of which we are constrained to believe, and shall so hold, that the title to the crop in controversy never passed from defendants to Tiner, much less to plaintiff, who afterwards took possession of the premises under Tiner.

We are therefore of the opinion that as by virtue of said reservation defendants had leave of ingress and egress to cut said crop and carry the same away, and as plaintiff had not right, title, or claim thereto, the chancellor did not abuse his discretion in dissolving the temporary injunction and entering the order, and for that reason the judgment of the lower court is affirmed.

Dunn, Hayes, and Williams, JJ., concur; Kane, C. J., not participating.