## FIRST N. BANK v. L. S. FISKE ET AL.

133 241
165 548

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

133　　241
20 SC 349

Argued January 20, 1890—Decided March 17, 1890.

1. A usage of trade, if known to both parties to a transaction to which it relates, is obligatory, and, unless excluded by the terms of the contract, enters into and is regarded as part of it, as much as though it had been written therein: Stultz v. Dickey, 5 Binn. 287; Hursh v. North, 40 Pa. 241.[*]

(*a*) The defendants, commission merchants dealing in wool, wrote plaintiff bank as follows: "We expect to have some business with Reid when the wool season opens, in which case we will honor his drafts with bill of lading attached:"

2. The plaintiff bank, discounting drafts upon the defendants by Reid, with knowledge of a usage of trade in the sale of wool on commission limiting the amount of drafts to a certain rate upon the value of the shipment, was affected by that knowledge in such transactions.

3. And, such usage not being unreasonable or in conflict with positive law, the plaintiff bank discounting drafts in excess of the amount authorized thereby, had no right of action against the defendants upon their refusal to honor them.

Before Paxson, C. J., Sterrett, Green, Williams, Mc-Collum and Mitchell, JJ.

---

[*] Cf.: Corcoran v. Chess, 131 Pa. 356; Ambler v. Phillips, 132 Pa. 167.

No. 61 July Term 1889, Sup. Ct.; court below, No. 19 March Term 1889, C. P.

On February 4, 1889, the First National Bank of Butte, Montana, brought assumpsit against Louis S. Fiske and Frank H. Kean, copartners, trading with John Dobson, special partner, as Louis S. Fiske & Co.

The plaintiff filed a statement of claim for a recovery of damages for the refusal of the defendants to honor certain drafts drawn upon them by one James R. Reid, and discounted by the plaintiffs under the engagements of a letter written by the defendants to the plaintiffs, set out in the syllabus. The averments of the statement sufficiently appear in the opinion of this court.

The defendants filed an affidavit of defence, averring as follows:

"At the time of the writing of the letter, a copy of which is set forth in plaintiff's statement, the defendants were wool merchants in the city of Philadelphia, and the James R. Reid mentioned in said letter was a shipper of wool, doing business in Montana territory. It was known to the plaintiff that the business referred to in said letter consisted in the shipping of wool by said Reid to the defendants for sale on commission. It was a fact also well known to the plaintiff that said business was conducted usually as follows, viz.: The shipper would ship the wool to his commission merchant and draw on the latter for an amount from two thirds to three quarters of the selling value of the wool, at the time of its arrival at the place of business of the commission merchant. The commission merchant would make advances on said wool, by paying said drafts, providing they did not exceed a reasonable amount, which was understood in the trade to be an amount never exceeding three fourths of the said selling value of the wool. It was well understood by the plaintiff that the drafts to be honored by the defendants were to be honored upon the security of the wool, bills of lading for which were attached to the drafts, and were not to exceed in amount the customary advances upon such wool.

"The two drafts of August 12 and 13, 1887, mentioned in the plaintiff's statement, were drawn by said Reid for an un-

Opinion of the Court.

reasonable amount, and for more than the value of the wool, which could have been easily ascertained by the bank had they examined the bills of lading. When the drafts and bills of lading were presented to the defendants, they refused for this reason either to accept the wool or honor the drafts, and the wool was subsequently sold on behalf of the plaintiff at its full value, and the plaintiff received the proceeds. The amount for which plaintiff now claims to recover is the excess of said drafts over the full value of the wool. Defendants never agreed to accept drafts to any extent to which Reid might draw, but only to accept drafts in the course of the business referred to in their letter, and in accordance with the custom of the said business already mentioned, which custom was well known to plaintiff."

On March 16, 1889, without opinion filed, the court made absolute a rule for judgment for want of a sufficient affidavit of defence, when the defendants took this appeal, assigning the order entering judgment for want of a sufficient affidavit of defence for error.

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the appellants.

*Mr. Alfred I. Phillips* (with him *Mr. J. Levering Jones* and *Mr. Hampton L. Carson*), for the appellee.

That the promise to accept, was an actual, unrestricted acceptance, counsel cited: Coolidge v. Payson, 2. Wheat. 66; Steman v. Harrison, 42 Pa. 49; Spaulding v. Andrews, 48 Pa. 411; Craig v. Sibbett, 15 Pa. 238; Bockoven v. National Bank, 11 W. N. 570; Tassey v. Church, 4 W. & S. 346; Bank v. Griswold, 72 N. Y. 472; Coffman v. Campbell, 87 Ill. 99; United States v. Bank of Metropolis, 15 Pet. 396.

OPINION, MR. JUSTICE McCOLLUM:

The defendants were engaged in the business of receiving and selling wool on commission in the city of Philadelphia, and James R. Reid was a shipper of wool, doing business at Butte, Montana. On May 23, 1887, the defendants wrote to the plaintiff as follows: " We expect to have some business with Mr. James R. Reid when the wool season opens, in which

case we will honor his drafts with bill lading attached." On August 12, 1887, the plaintiff cashed Reid's draft on the defendants for $4,007.80, with bill of lading attached for 22,285 lbs. of wool, shipped by Reid to defendants at Philadelphia, and on the next day a like draft for $2,752.97, with a like bill of lading attached for 14,951 lbs. of wool. The defendants refused to honor these drafts, or to receive the wool described in the bills of lading attached, on the ground that Reid, in drawing drafts for these amounts, had exceeded his authority. The drafts with the bills of lading attached were returned to the plaintiff, and at Reid's instance the bills of lading were forwarded to Justice, Bateman & Co., wool merchants in Philadelphia, who had them indorsed by the consignees, delivered them to the carrier, received the wool described in them, and sold it in the market for its full value. The proceeds of this sale were received by the plaintiff, and were $1,430.82 less than the amount called for by the drafts. This action was brought to recover the difference.

The rights of the parties depend on the proper construction of the defendants' letter. The plaintiff contends that it constituted an undertaking on their part to honor all drafts which Reid might draw upon them, with bill of lading attached, without regard to the value of the consignment.

It is averred in the affidavit of defence that the plaintiff knew that the business referred to in this letter was the shipping of wool for sale on commission ; that it was a usage of the trade for the shipper, when he consigned the wool to his factor, to draw on the latter for any amount not exceeding three fourths of the value or selling price of the wool at the time of its arrival at the place of its destination, and for the factor to make advances on the wool by paying these drafts. It is further averred that, " it was understood by the plaintiff that the drafts to be honored by the defendants were to be honored on the security of the wool, bills of lading for which were attached to the drafts, and were not to exceed in amount the customary advances on such wool."

A usage, if known to the parties to a transaction to which it relates, is obligatory, and, unless excluded by the terms of the contract, enters into and is regarded as a part of it, as much as though it had been written therein : Stultz v. Dickey, 5 Binn.

287; Hursh v. North, 40 Pa. 241.   It is admissible to add in-
cidents to a contract which are not inconsistent with its terms,
and to ascertain the intention of the parties in reference to
matters about which the contract is silent: Clarke's Browne on
Usages & Customs, 167.   The usage described in the affidavit
is not unreasonable, or in conflict with positive law.   It does not
contradict the terms of the instrument on which the plaintiff
relies, but it explains them, and gives effect to the intention
of the parties.   The letter of the defendants must be read in
the light of the usage known to the parties, and applicable to
the transaction between them.   When so read, it is fatal to
the plaintiff's claim for the overdraft.   We think the affidavit
presents a good defence to the action.

Judgment reversed, and procedendo awarded.